1    Mary-Christine Sungaila (#156795)
     mcsungaila@swlaw.com
2    Deborah S. Mallgrave (#198603)
     dmallgrave@swlaw.com
3    Matthew E. Bennett (#268373)
     mbennett@swlaw.com
4    SNELL & WILMER L.L.P.
     600 Anton Boulevard, Suite 1400
5    Costa Mesa, CA 92626-7689
     Telephone:  714-427-7000
6    Facsimile:   714-427-7799

7    Allison M. Lefrak (*pro hac vice* pending)
     alefrak@humanrightsusa.org
8    World Organization for Human Rights USA
     2029 P Street, N.W., Suite 202
9    Washington, DC 20036
     Telephone:  202-296-5702
10   Facsimile:   202-296-5704

11   Attorneys for Plaintiff
     ANTHONY N. CHAI

12

13              UNITED STATES DISTRICT COURT FOR THE

14              CENTRAL DISTRICT OF CALIFORNIA

15                                        CV11- 06988 GHK (CWX)

16   ANTHONY N. CHAI,                  CASE NO.:

17              Plaintiff,             COMPLAINT FOR:
                                       1.  NEGLIGENCE;
18   vs.                               2.  UNFAIR BUSINESS
                                           PRACTICES; and
19   NETFIRMS.COM, INC., a             3.  VIOLATION OF
     Delaware Corporation, and             CONSTITUTIONAL
20   DOES 1-9, inclusive,                  PRIVACY RIGHTS

21              Defendants.            DEMAND FOR JURY TRIAL

22

23                          **SUMMARY**

24        This case lies at the intersection of privacy guarantees, freedom of

25   expression, international human rights law, and the internet.

26        Anthony N. Chai, a naturalized United States citizen from Thailand, brings

27   this action against Netfirms.com, Inc., a provider of web hosting and domain name

28   search and registration services headquartered in Canada with an office in the

United States. Mr. Chai posted anonymous comments critical of Thailand *lèse majesté* laws on www.manusaya.com,[1] a forum for users to anonymously post a range of articles and comments about politics in Thailand, which was hosted by defendant Netfirms.com.

As the host of Manusaya, Netfirms.com had access to Internet Protocol (IP)[2] information and email addresses for all of the users who posted articles or comments on the website.

Thailand's *lèse majesté* laws, contained in Article 112 of Thailand's Criminal Code, provide in pertinent part: "Whoever defames, insults or threatens the King, Queen, the Heir-apparent or the Regent, shall be punished with imprisonment of three to fifteen years." *Lèse majesté* laws are enforced by the National Intelligence Agency, the Ministry of Information and Communication Technology, and the Bureau of High Tech Crimes within the Department of Special Investigations ("DSI"). In December 2003, the Information and Communications Technology Ministry set up a Cyber Inspector Team to monitor and ban websites featuring pornography and other content the government determined to be inappropriate, including content subject to *lèse majesté* laws.

*Lèse majesté* laws have been enforced with alarming frequency over the past several years. Thai-based media routinely self-censor coverage of the royal family, but the Internet has opened a new forum. Thai authorities have responded by trying to block thousands of websites considered subversive, arguing that protection of the monarchy's reputation is of the utmost importance. Often those charged with *lèse*

---

[1] Manusaya is a Thai word that means "human." The tagline for the site, translated into English, was "For Democracy, For Human Rights, in the Land of the Free." A note at the top of the site's home page said (in Thai), "Please note: This website is dedicated to those who fight for full democracy, human rights, in the land of the free. Here, we have no class system, racism, or caste. We are world human beings, world citizens. We are equal. We value equal rights and equal liberty. We oppose all forms of violence and all kinds of terrorism being waged around the world."

[2] An IP address is a numerical label assigned to each device (*e.g.*, computer, printer) participating in a computer network. An IP address serves two principal functions: host or network interface identification and location addressing.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

*majesté* offenses are denied bail and remain in prison for several months awaiting trial. Particularly harsh punishments have been delivered by the court in several instances, including a sentence of 18 years' imprisonment.

In the recent United Nations Human Rights Committee General Comment No. 34, the Human Rights Committee specifically expressed concern over *lèse majesté* laws as a violation of freedom of expression.[3] *Lèse majesté* provisions directly contradict fundamental principles of international law, including the right to freedom of expression, the right to privacy, and the right to due process. By June 2005, Information, Communication, and Technology (ICT) companies in the United States and elsewhere around the world were well aware of the dangers posed to dissidents in many parts of the world and the consequent obligations those dangers put upon web hosting companies to use due diligence when responding to law enforcement requests for private information that could identify critics and human rights defenders.[4]

On June 6, 2005, at the request of Thai officials, Netfirms.com suspended Manusaya's account and the website was, in effect, shut down. Sometime before May 2006, also at the request of Thai officials, Netfirms.com provided Mr. Chai's

---

[3] *General Comment No.34: Article 19: Freedoms of opinion and expression*, U.N. Human Rights Comm., 102d Sess., at 11, U.N. Doc. CCPR/C/GC/34 (July 21, 2011), *available at* http://www2.ohchr.org/english/bodies/hrc/docs/GC34.pdf.

[4] *See, e.g,* "Cyberspace Rights Threatened in Vietnam, Rights Group Says," San Jose Mercury News, Nov. 27, 2003 ("Internet surveillance in Vietnam has led to unwarranted prison sentences for dissidents who used online forums to criticize the communist state and espouse pro-democracy views, Amnesty International said in a report released Wednesday."); Willy Wo-Lap Lam , "China Frees Net Dissidents," CNN.com, Nov. 30, 2003. ("However, at least a dozen-odd dissidents who have posted anti-government articles on the Web remain incarcerated."); Stuart Millar, "Internet providers say no to Blunkett," The Guardian, October 22, 2002. ("The internet industry has refused to sign up to plans to give law enforcement and intelligence agencies access to the records of British web and email users, throwing David Blunkett's post-September 11 data surveillance regime into fresh disarray."); "Successor to KGB is Spying Over the Internet, Free-Speech Groups in Russia Decry Action," Associated Press, Feb. 22, 2000 ("'The whole Federal Security Service will be crying tomorrow over your love letters,' warns one of the banners that angry web designers in Russia have posted on the Internet. Russian advocates of human rights and free speech say the security service has already forced many of the country's 350 Internet service providers to install surveillance equipment.")

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1   IP address and the two email addresses associated with that IP address, without Mr.

2   Chai's knowledge or consent.  Netfirms.com provided this information to Thai

3   officials without first contacting the United States Department of State or

4   requesting that the officials obtain the proper court order, subpoena, or warrant as

5   required by the Treaty with Thailand on Mutual Assistance in Criminal Matters.[5]

6   Additionally, Netfirms.com, a company with its principal place of business in

7   Canada, provided this information to Thai officials without complying with the

8   Personal Information Protection and Electronic Documents Act (PIPEDA).[6]

9       As a direct result of Netfirms.com's actions, Mr. Chai was detained and

10   interrogated twice by Thai government officials – once at the DSI in Thailand and

11   once here in the United States – for allegedly insulting the Thai monarchy in

12   violation of Article 112.  As a consequence, Mr. Chai lived in constant fear that if

13   he gave the government officials any reason whatsoever to renew their interest in

14   him, he would become one of the political prisoners whose number grew at an

15   alarming rate as strife between pro- and anti-monarchy factions in Thailand

16   intensified.[7]

17       On August 25, 2009, Plaintiff was informed by email by a Thai government

18   official that he faces arrest and prosecution for violation of Article 112 of

19   Thailand's Criminal Code if he ever returns to his native country of Thailand where

20   many of his family members still reside and where he owns a home.  Prior to this

21   time, Mr. Chai traveled to Thailand approximately three times annually.  On

22   August 8, 2011, Plaintiff received notification by mail that there is still an active

23   arrest warrant against him issued by the Thai Criminal Court for "Defamation of the

24

25   [5] *See* Treaty with Thailand on Mutual Assistance in Criminal Matters, U.S.-Thailand,
    art. 3-4, S. Treaty Doc. 100-18 (1986).

26   [6] Personal Information Protection and Electronic Documents Act (S.C. 2000, c.5) applies
27   to private enterprises in Canada, and prescribes strict rules for the collection and
    dissemination of personal information.

28   [7] Todd Pittman and Sinfah Tunsarawuth, "Thailand Arrests American for Alleged King
    Insult," Associated Press, Mar. 27, 2011.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1   King and Queen under Article 112 of *Lèse majesté* law."

2   Defendant Netfirms.com's conduct violates California state laws, as well as

3   Constitutional and international law.   Plaintiff seeks to hold Netfirms.com

4   accountable for its unlawful actions.

5   **JURISDICTION AND VENUE**

6   1.   This Court has jurisdiction over Plaintiff's claims under 28 U.S.C.

7   § 1332 (diversity jurisdiction).   The amount in controversy exceeds $75,000.00,

8   exclusive of interests and costs.

9   2.   This action also arises under the First Amendment of the Constitution

10   of the United States.  The jurisdiction of this Court therefore also is founded on 28

11   U.S.C. § 1331.

12   3.   This Court has supplemental jurisdiction over the related state law

13   claims asserted herein pursuant to 28 U.S.C. § 1367.   Supplemental jurisdiction

14   over those claims is appropriate because they arise from the same common nucleus

15   of operative facts from which the federal claim arises.

16   4.   Venue is proper in the Central District of California pursuant to 28

17   U.S.C. § 1391(a), as a substantial part of the events or omissions giving rise to the

18   claim occurred within Long Beach, California.

19   5.   This Court has personal jurisdiction over defendants in that they are

20   doing business in the State of California and they are committing the acts alleged in

21   this State.

22   **PARTIES**

23   6.   Plaintiff Anthony N. Chai is a citizen of the State of California.  At all

24   times relevant to this complaint, Plaintiff was and is engaged in the business of

25   owning and operating a computer repair and sales store in Long Beach, California

26   called Computer Station.   Plaintiff sues for his injuries, including pain and

27   suffering, resulting from the unlawful actions of the Defendants.   Specifically,

28   Plaintiff was interrogated twice, once in Thailand and once in the United States, for

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1  alleged violations of Thailand's *lèse majesté* laws.  Because there is an active arrest
2  warrant pending, he cannot safely return to his native country of Thailand.

3       7.     Upon information and belief, defendant Netfirms.com is a Delaware
4  corporation with its principal place of business located in Markham, Ontario in
5  Canada.  At all times mentioned in this complaint, Defendant Netfirms.com was
6  and is engaged in the business of website hosting and domain name registry, and
7  was and is engaged in the marketing of these products.  Upon information and
8  belief, Defendant Netfirms.com conducts business in this judicial district.  By the
9  nature of its activities, Netfirms.com has access to and maintains information about
10  individuals using its electronic services, both customers and those utilizing their
11  customers' online services.

12       8.     Plaintiff is unaware of the true names and capacities of Defendants 1-9
13  inclusive, and therefore sues such DOE defendants by fictitious names.  Plaintiff
14  will amend his complaint to allege the true names and capacities as and when they
15  have been ascertained.  Upon information and belief, each such fictitiously named
16  defendant is in some way responsible for the events or occurrences referred herein.

17       9.     Upon information and belief, each of the defendants was the agent,
18  servant and/or employee of each of the remaining defendants and was acting within
19  the purpose and scope of said agency, service and/or employment and with the
20  permission/consent of its co-defendants.

## STATEMENT OF THE FACTS

22       10.    The Kingdom of Thailand (hereinafter "Thailand") maintains *lèse*
23  *majesté* prohibitions within its Criminal Code.[8]

24       11.    Specifically, Thailand's *lèse majesté* provisions in the Thai Criminal
25  Code make it a criminal offense punishable by up to fifteen years' imprisonment to

---

[8] U.S. DEP'T OF STATE, THAILAND COUNTRY REPORTS ON HUMAN RIGHTS
PRACTICES -2010, *available at*
http://www.state.gov/g/drl/rls/hrrpt/2010/eap/154403.htm.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    defame, insult, or threaten certain members of the royal family.

2    　　12.　From approximately 2004 through 2005, Manusaya operated on the

3    Internet as a forum where users could post a wide range of articles and comments

4    regarding Thai politics.

5    　　13.　Manusaya was owned and operated by Abdulrosa Basil Jengoh, a

6    Swedish citizen, who maintains no connection to Plaintiff.

7    　　14.　Patrons of Plaintiff's computer store, Computer Station, were

8    permitted to use the store's computers to access the Internet, including the

9    Manusaya website, and anonymously post articles and comments to the site.  The

10    website's users, including Plaintiff, would send emails to Manusaya to submit

11    articles or comments to be posted on the site.  Plaintiff, his employees, and patrons

12    used two email addresses in the following form:   xxxxxxxx@yahoo.com, which

13    belonged     to     Mr. Jack     Chan,     a     Computer     Station     employee,     or

14    xxxxxx@hotmail.com, which belonged to Plaintiff, to submit articles and

15    comments for posting on Manusaya.

16    　　15.　When articles and comments were posted on Manusaya, they were

17    anonymous.  Neither the identity of the author, the email address that was used to

18    submit the article or comment, nor the IP address of the computer were publicly

19    visible on Manusaya.

20    　　16.　Generally, the comments that Plaintiff posted on Manusaya focused on

21    his perception of *lèse majesté* laws as being unjust.

22    　　17.　Manusaya was hosted by Defendant from March 24, 2004 to June 6,

23    2005.  Defendant shut down Manusaya's account in June 2005 at the request of

24    officials from Thailand.

25    　　18.　In a statement published on a Thai Government website on March 17,

26    2006, Police Colonel Yanaphon Youngyuen's (hereinafter "Pol. Col. Youngyuen"),

27    the Director of the Bureau of High Tech Crimes, Department of Special

28    Investigation, at that time summarized the Thai Government's investigation related

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

to Manusaya.  He described Manusaya as a website "whose aim was to defame and insult the monarchy … to coerce people to lose faith and love of the monarchy, including each and every princess."

19.   Pol. Col. Youngyuen stated further in the announcement, "In order to resist such news as propagated by www.manusaya.com, the three major governmental agencies, namely the National Intelligence Agency, Ministry of Information and Communication Technology, and Department of Special Investigations, have worked together since March 27, 2004 and received cooperation from all the Thai internet service providers and webmasters in Thailand to block such sites deemed *lèse majesté* to their subscribers."

20.   Pol. Col. Youngyuen stated further in this statement that as a result of the investigations, four websites were shut down and others agreed to delete offending content.  He identified Netfirms.com as the web hosting company of Manusaya, and stated that he received "vital data from Netfirms.com for our expanded investigation."

21.   Defendant confirmed in writing, by letter to counsel for Plaintiff on December 1, 2009, that Defendant Netfirms.com received a complaint regarding Manusaya from the Thai officials, as a result of which Defendant Netfirms.com decided to suspend Manusaya's account on June 6, 2005.

22.   At some point between initiating cooperation with the Thai investigators in May 9, 2006, Defendant also provided Thai officials with Plaintiff's IP address and the two associated email addresses.

### *May 2006 Arrest and Interrogation*

23.   In May 2006, Plaintiff traveled to Thailand.  Plaintiff was initially detained at the Thailand Immigration Desk at the Bangkok airport.  The immigration officer stepped away from the desk and went to a nearby office to make a telephone call.  He returned approximately ten minutes later, and Plaintiff was permitted to proceed into the country.

24.   Plaintiff remained for approximately two weeks in Thailand.  During that time he stayed in the condominium he owns in Bangkok.  He visited with his deceased brother's wife and his three nieces and nephews.  He also visited with friends and traveled by train to the resort town of Hua Hin for three days.

25.   On May 9, 2006, on his way back home to California, while Plaintiff was waiting in the security line at the Bangkok airport, he was approached by approximately 5-7 agents from the DSI who escorted him out of the security line and to an office at the airport.

26.   Plaintiff was told by the agents that they had a warrant for his arrest for committing an act of *lèse majesté*.  Plaintiff asked to see the alleged warrant, but the agents refused to show it to him.

27.   In the office at the airport, the agents searched Plaintiff's belongings. They confiscated his personal laptop computer from him.  They conducted a pat down search of his body and searched the pockets of his clothing.  They removed his wallet and searched through the contents.

28.   After waiting in the office for approximately one hour, Plaintiff was escorted outside of the airport to an unmarked police car, in which he was transported to the DSI, approximately 45 minutes from the airport.  When they arrived at the DSI, Plaintiff was escorted upstairs to Pol. Col. Youngyuen's office. There were approximately ten other people in the office, including a videographer and photographer.

29.   Upon arriving in Pol. Col. Youngyuen's office, Plaintiff was searched again.  He underwent another pat down search of his body.  He was finger-printed and photographed.

30.   Plaintiff was interrogated from approximately 7:10 p.m. on May 9, 2006 until 3:30 a.m. on May 10, 2006 and from 8:00 a.m. on May 10, 2006 until approximately 4:50 p.m. when he was finally released from the DSI.  Pol. Col. Youngyuen was in charge of the interrogation.  The videographer appeared to be

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    recording much of the interrogation.

2        31.    At the onset of the interrogation, Plaintiff requested that he be

3    provided with an attorney.   Eventually, someone who presented herself as his

4    appointed attorney arrived and told Plaintiff that he needed to cooperate fully and

5    answer all the questions he was asked.   She sat silently through the interrogation

6    and did not provide any legal advice to Plaintiff.

7        32.    Plaintiff also requested that he be permitted to contact the U.S.

8    Embassy, but the DSI officers denied his request saying that it was too late in the

9    night for him to reach anyone at the embassy.

10       33.    During   the   interrogation,   Plaintiff   was   subjected   to   severe

11   psychological and physical stress.   The DSI officers deprived him of food, water,

12   and sleep until 3:30 a.m. on May 10, 2006.   At that time, he was taken to a motel

13   where he was told he could rest, but DSI guards remained in the room with him at

14   all times.   He was permitted to eat breakfast at approximately 7:30 a.m. at the

15   motel, and then he was taken back to the DSI for further interrogation.

16       34.    The DSI officers threatened violence against Plaintiff's family.   One of

17   the DSI officers mentioned certain members of Plaintiff's family by name and

18   stated to Plaintiff, "I know where your relatives live in Bangkok and California.   If

19   you want them to live in peace, you must cooperate."   The officer specifically

20   mentioned the names of Plaintiff's three daughters and his son and indicated that he

21   knew where they lived.

22       35.    Plaintiff was   extremely   frightened   during   the   course   of   the

23   interrogation.   He decided that he had no choice but to cooperate fully and answer

24   every question that was asked of him in order to avoid being harmed.

25       36.    During the interrogation, Pol. Col. Youngyuen accused Plaintiff of

26   committing an act of *lèse majesté* by posting articles and comments on Manusaya.

27   Pol. Col. Youngyuen did not provide Plaintiff with a copy of the posts or any

28   details about the contents.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

37.   DSI officers retrieved Plaintiff's confiscated laptop during the interrogation.  They forced Plaintiff to provide his access passwords, and copied electronic files containing personal information including his bank account and personal property information.  The officers forced him to provide them with all of his email addresses and passwords.

38.   The DSI officers made photocopies of all of the documents in Plaintiff's possession, including his U.S. passport.  Plaintiff had a small notebook in his possession where he kept personal notations, *e.g.*, reminders, phone numbers, bank account numbers, *etc*.  The officers photocopied every page of the passport and the notebook.

39.   During the interrogation, at approximately 12:00 a.m. on May 2, 2006, Pol. Col. Youngyuen provided the Plaintiff with a document that had Defendant's name and logo at the top.  Plaintiff was permitted to look at the document for approximately one minute.  The document appeared to Plaintiff to be a print-out from a computer.  The document contained a list of email addresses and their associated IP addresses.

40.   One of the email addresses in the document was Plaintiff's.  Next to his email address, xxxxxx@hotmail.com,[9] there was his IP address.  Plaintiff also saw the email address of his employee, Jack Chan.  The email address was xxxxxxxx@yahoo.com.  That email address had the same IP address as Plaintiff's.

41.   An IP address can easily be used to locate the physical presence of the computer associated with the IP address.  Only one computer is associated with a particular IP address.

42.   At the end of the interrogation, DSI Officers forced Plaintiff to write a statement admitting that he violated Thailand's *lèse majesté* laws and he would never do it again.  The statement also included words of praise and apology to the

---

[9]  While the document shown Plaintiff contained actual email addresses, the email addresses are shown here in redacted form for privacy purposes.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1  Thai king.

2      43.    Plaintiff was forced to write two versions of this statement – one in

3  Thai and one in English. He was not provided with copies of the handwritten

4  statements.

5      44.    Plaintiff was finally released from the DSI at approximately 5:00 p.m.

6  on May 10, 2006. He took a cab from the DSI to his condominium in Bangkok.

7  He was extremely upset and shaken when he returned to his condominium and

8  immediately contacted his family members in California, including his ailing

9  mother, to tell them what had happened to him. During these phone calls to the

10  U.S., Plaintiff heard periodic clicking sounds and beeping noises which led him to

11  believe that his phone calls were being monitored.

12      45.    As a result of the interrogation and detention, the Plaintiff missed his

13  initial flight to the United States. He re-booked a new flight at his own expense the

14  following day and returned to his home in Long Beach, California.

15      46.    In the days after Plaintiff returned home to California, he was

16  contacted by email by Pol. Col. Youngyuen who asked Plaintiff to send him copies

17  of any pro-democracy or anti-monarchy materials that he had in his possession.

18      47.    Because he wanted to appear as if he was continuing to cooperate with

19  the investigation, Plaintiff scanned some pro-democracy booklets and documents

20  that he had in his possession and emailed them to Pol. Col. Youngyuen. Plaintiff

21  asked by email when the investigation would be closed, but Pol. Col. Youngyuen

22  did not provide him with a response.

23      ***Demand for Additional Interrogation in July 2006***

24      48.    In July 2006, Pol. Col. Youngyuen traveled to the United States to

25  attend a training course for foreign police and military officers offered by the

26  United States Information Agency in Washington, D.C. On his return back to

27  Thailand, Pol. Col. Youngyuen had a brief stop between flights in Los Angeles

28  International Airport ("LAX"). He contacted Plaintiff when he was still in

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

Washington, D.C. and asked Plaintiff to meet him at LAX.

49.    Because Plaintiff continued to want to appear cooperative with the investigation, he agreed to meet Pol. Col. Youngyuen at LAX.

50.    During the telephone conversation, Pol. Col. Youngyuen told Plaintiff that he would like Plaintiff to bring iPods or some other similar items of value home for his children.

51.    Plaintiff and Pol. Col. Youngyuen met for approximately thirty minutes at a McDonald's restaurant at LAX.

52.    Plaintiff did not bring iPods to the meeting.  He brought local Thai newspapers that he thought Pol. Col. Youngyuen could read on the flight back to Thailand.  Pol. Col. Youngyuen made it clear to Plaintiff that he was very disappointed that he did not bring any gifts of value.

53.    During the meeting, Plaintiff asked Pol. Col Youngyuen if the investigation was still ongoing, and Pol. Col. Youngyuen confirmed that it was.

54.    Plaintiff asked Pol. Col. Youngyuen when his laptop computer would be returned to him.  Pol. Col. Youngyuen responded that it would not be returned to Plaintiff while the investigation was still pending.

55.    Subsequently, Pol. Col. Youngyuen contacted the Plaintiff via letters on August 8, 2006 and September 11, 2006, requesting that he return to Thailand immediately for further questioning in regards to the *lèse majesté* allegations.

56.    In the letter dated August 8, 2006, Pol. Col. Youngyuen wrote, "the time has come for you to officially surrender yourself to the investigators of this case … you are required to surrender to our bureau on August 24, 2006 at 10:00 AM…"

57.    Plaintiff responded to the letter by email and said that he was unable to report to the bureau on that date because he had another obligation.  He was extremely frightened and believed that he would be arrested and imprisoned if he returned to Thailand.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

58.    Plaintiff received a second letter from Pol. Col. Youngyuen on September 11, 2006 which provided that because Plaintiff failed to report to the bureau on August 24, 2006, a warrant for his arrest would be issued.

### *November 2-3, 2006 Interrogations*

59.    After these letters, Pol. Col. Youngyuen continued to persist in attempting to further interrogate Plaintiff by contacting him via email and requesting that he return to Thailand for more questioning.  However, Plaintiff refused to return to Thailand for fear of being arrested and imprisoned.

60.    Plaintiff finally agreed to meet with Thai law enforcement officials in Southern California.  Plaintiff believed that if he cooperated with the officials, they would finally conclude the investigation and that he would not be charged with violating *lèse majesté* laws.  He hoped that it would be safer for him to be interrogated in the U.S. than for him to return to Thailand where he could be arrested and imprisoned.

61.    The interrogations occurred from 10:30 a.m. – 12:45 p.m. on November 2, 2006 and from 10:30 a.m. – 2:30 p.m. on November 3, 2006 at a hotel room in the Magic Castle Hotel in Hollywood, California.

62.    At this interrogation, Plaintiff brought three witnesses, out of fear for his safety and to attest to his credibility.

63.    On behalf of the Thai government, Pol. Col. Youngyuen was present, as well as Public Prosecutor Viched Musikaransee, and Palace Representative Joe Kashemsant.

64.    At the onset of the interrogation, Mr. Kashemsant gave Plaintiff several tokens of the monarchy as "gifts":  an official royal yellow shirt with a royal insignia on the pocket, a Video CD and a DVD regarding the royal family, a book celebrating the 60th anniversary of the Thai King's accession to the throne, and two CDs of royal music.

65.    During the interrogation, the Thai authorities reviewed the documents

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1   that Plaintiff had scanned and emailed to them shortly after he had returned home to

2   California in July 2006.

3       66.    At the end of the interrogation on November 2, 2006, Pol. Col.

4   Youngyuen assured Plaintiff that he could travel to Thailand without fear of being

5   arrested and prosecuted.   Plaintiff requested this assurance in writing, but his

6   request was denied. The interrogation concluded at approximately 12:45 p.m.

7       67.    Plaintiff was asked to return the subsequent day for further

8   interrogation.  He continued to believe that if he participated in this interrogation,

9   the investigation would ultimately be concluded and he would not be charged with

10  any crime.   Accordingly, he returned to the same hotel room on the morning of

11  November 3, 2006.

12      68.    During the second day of interrogation, which began at approximately

13  10:30 a.m., Plaintiff was asked about his other business ventures apart from

14  Computer Station.   Plaintiff stated that he also had real estate and U.S. stock

15  investments.

16      69.    Plaintiff was asked by the Thai government officials who else had

17  access to his email accounts.   Plaintiff stated that xxxxxx@hotmail.com and

18  xxxxxxxx@yahoo.com were business email accounts that Mr. Jack Chan had

19  access to and would use when Plaintiff was out of town or unable to personally

20  respond to emails.

21      70.    Pol. Col. Youngyuen told Plaintiff that without his continued

22  cooperation in the investigation, they would be unable to close the case.

23      71.    At the conclusion of the interrogation, Plaintiff was asked to sign

24  typed statements that were prepared by Pol. Col. Youngyuen during the

25  interrogations.   The two statements summarized the subject of the two

26  interrogations at the hotel.  Plaintiff did not receive a copy of these statements.

27      72.    Pol. Col. Youngyuen told Plaintiff that he would complete his

28  investigation and forward his report to the prosecutor's office.  Mr. Musikaransee

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1   and the prosecution team would then review the report and make a determination as

2   to whether Plaintiff should be prosecuted.

3        73.    Pol. Col. Youngyuen stated again that Plaintiff was free to enter and

4   leave Thailand at any time without fear of being arrested or prosecuted.

5        74.    The interrogation ended at approximately 2:30 p.m. on November 3,

6   2006.

7        ***Escalating Unrest in Thailand and Prosecutions for Lèse Majesté***

8        75.    In September 2006, a military coup in Thailand overthrew the elected

9   government and repealed that nation's constitution.  This set off a series of internal

10  political struggles between the monarchy and its supporters and those who

11  supported a fully elected constitutional government.

12       76.    Protesters occupied a main government building from late August until

13  early December 2008, blockaded parliament in October 2008, and occupied and

14  forced the closure of Bangkok's airports for several days in the end of 2008.

15       77.    In 2009, protests disrupted a major Asian summit and caused riots in

16  Bangkok.  These protests continued to smolder until Spring 2010, when

17  demonstrators occupied main areas in Bangkok, effectively shutting down the

18  commercial and governmental centers of the city.

19       78.    As a result of the standoffs, major buildings were burned, and

20  according to reports, ninety-two people were killed, and over 1,800 were injured.

21       79.    As the political pressure on the Thai monarchy increased, so had the

22  enforcement of *lèse majesté* laws and the penalties for violations.[10]

23       80.    Often those charged with *lèse majesté* offenses are denied bail and

24  remain in prison for several months awaiting trial.  In a number of cases, these trials

25

26

27

28  ───────────────
    [10]  Todd Pittman and Sinfah Tunsarawuth, "Thailand Arrests American for Alleged King
    Insult," Associated Press, Mar. 27, 2011.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

have been closed to the public.[11]

81.     Particularly harsh punishments have been delivered by the court in several instances, such as the cases of Darunee Charnchoensilpakul, who was sentenced to 18 years' imprisonment, and Tanthawut Taweewarodomkul, who received a 13-year prison term.[12]

82.     This political unrest in Thailand made it impossible for Plaintiff to conduct an investigation that would reveal exactly who was involved with the disclosure of his identity and/or anonymous writings to the Thai government, or the circumstances under which they had done so.  The turmoil and violence in Thailand made an inquiry very difficult logistically.   In addition, given that the Thai government had already identified Plaintiff as a suspect for exactly such offenses, and those officials, who had been able to move freely within the United States, obviously knew how to reach and monitor Plaintiff and his family members, Plaintiff lived in fear of reprisal.  Any direct inquiries to the government itself or to the same actors who may have disclosed his identity in the first place could have had extremely dangerous consequences for Plaintiff and his family.  Rather than risk becoming one of the political prisoners whose number grew at an alarming rate as strife between pro- and anti-monarchy factions in Thailand intensified, Plaintiff could only research the individuals and corporations who might have been involved in discreet ways so as not to raise the suspicions of the Thai government.

### Lèse Majesté Charge and Inability to Return to Thailand

83.     On August 25, 2009, Palace Representative Joe Kashemsant alerted Plaintiff by email that he had been charged with *lèse majesté* in a Thai national court, and that he would be arrested if he returned to Thailand.

---

[11]  Human Rights Watch Letter to Prime Minister Yingluck Regarding Your Government's Human Rights Agenda available at http://www.hrw.org/news/2011/08/15/human-rights-watch-letter-prime-minister-yingluck-regarding-your-governments-human-r [accessed 16 August 2011].
[12]  *Id.*

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

84.   Since August 25, 2009, Plaintiff has been unable to return to Thailand because he would be arrested and prosecuted for the *lèse majesté* charge.   In addition to the stress and fear he feels as a result of these charges, Plaintiff is unable to visit with his relatives and friends in Thailand and unable to enjoy his property there.   Because of the very real threat of arrest, he felt it necessary to short sell stocks he held in Thailand at a significant loss.

85.   Since learning of the pending criminal charges on August 25, 2009, Plaintiff has sought to uncover the means by which the Thai government identified him and connected him with the alleged acts.   In doing so, Plaintiff, through his counsel, has made inquiries with government agencies, officials, individuals, and companies that might have held personal information connecting him or his store's computer with writings on Manusaya.

86.   By letter to counsel for Plaintiff on December 1, 2009, Defendant Netfirms.com confirmed that it received a complaint regarding Manusaya from the Thai officials, as a result of which Defendant decided to suspend Manusaya's account on June 6, 2005.

### FIRST CLAIM FOR RELIEF: NEGLIGENCE
### Cal. Civ. Code § 1714(a)

87.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 86 as if set forth fully herein.

88.   At a time prior to May 9, 2006, Defendant negligently disclosed to Thai law enforcement officials Plaintiff's identifying and confidential information entrusted in its possession.

89.   Defendant negligently disclosed Plaintiff's identifying and confidential information to Thai law enforcement officials without regard for the requirements set forth in the Treaty with Thailand on Mutual Assistance in Criminal Matters and contrary to data privacy, First Amendment, PIPEDA, and industry standards.

90.   By the time of Defendant's disclosure of Mr. Chai's identifying and

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

confidential information to Thai officials, ICT companies in the United States were well aware of the dangers posed to dissidents in many parts of the world and the consequent obligations those dangers put upon web hosting companies to use due diligence when responding to law enforcement requests for private information that could identify critics and human rights defenders.

91.     It was reasonably foreseeable that disclosure of Plaintiff's identifying and confidential information to government officials from Thailand, a country known for overbroad and politically motivated enforcement of its *lèse majesté* laws in violation of the right to freedom of expression, the right to privacy, and the right to due process,[13] would result in harm to Plaintiff.

92.     Defendant owed a duty to its account holders, as provided for in its term of service agreement, not to provide their personal information to any law enforcement authorities or legal agents without a proper court order, subpoena or warrant.

93.     It is reasonably foreseeable that if Defendant owed this duty to its account holders, it also had a duty to protect the confidentiality of personal identifying information with which it was entrusted by users of its account holders.

94.     Defendant breached its duty to the Plaintiff by negligently engaging in the conduct described herein.

95.     But for the actions of Defendant, Plaintiff would not have suffered any injury as a result of his anonymous postings on Manusaya advocating for democracy in Thailand and abolition of Thailand's *lèse majesté* laws.

96.     As a direct and proximate result of the actions of Defendant Netfirms.com, Plaintiff has been deprived of his liberty and freedom within his

---

[13] These rights are expressed in a number of international instruments including but not limited to the International Covenant on Civil and Political Rights Articles 17 and 19, the International Covenant on Economic, Social, and Cultural Rights Article 1, and the International Convention on the Elimination of All Forms of Racial Discrimination Article 5.

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

native country of Thailand; specifically the Plaintiff cannot safely travel to, reside in, or visit with friends and family in Thailand without facing inevitable arrest and prosecution for violation of *lèse majesté* laws.

97.   Plaintiff has suffered severe psychological distress as a direct and proximate result of Defendant's actions. He was detained at the airport in Bangkok, taken to the DSI, harshly interrogated and threatened, deprived of food and water, and kept overnight. He was subsequently interrogated again over the course of two days in the United States. Finally, he was notified that he would be arrested and charged with *lèse majesté* if he ever returns to his native country of Thailand. All of these events were extremely psychologically damaging to Plaintiff.

98.   As a direct and proximate result of Defendant's actions, Plaintiff suffered financial losses. As a result of being interrogated at the DSI in Bangkok, he missed his return flight to the United States and was forced to purchase a new ticket at his own expense. During the interrogation by the DSI officials, Plaintiff's laptop computer was confiscated and never returned to him. He was also forced to replace his laptop computer at his own expense. Additionally, he has been unable to enjoy his Bangkok condominium, and he felt that he needed to short sell his Thai stocks when he was notified that he would be arrested and charged with *lèse majesté* if he ever returns to Thailand.

99.   Defendant's negligent conduct constitutes reckless disregard for the rights and safety of Plaintiff. Defendant's conduct comes within the definition of malicious acts punishable by the assessment of punitive damages because Defendant provided Plaintiff's confidential identifying information to Thai officials when Defendant knew, or should have known, that it was highly probable that Defendant's actions would place Plaintiff's safety at risk and cause harm to Plaintiff.

100.   The Plaintiff is entitled to recover any and all other damages available to him which total amount of damages exceeds $75,000, in an amount to be proven

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1  at trial.

2  ## SECOND CLAIM FOR RELIEF: VIOLATION OF THE CALIFORNIA

3  ## BUSINESS AND PROFESSIONS CODE, §17200, *et seq.*

4  101. Plaintiff re-alleges and incorporates by reference each and every

5  allegation contained in Paragraphs 1 through 100 as if set forth fully herein.

6  102. Plaintiff brings this cause of action pursuant to California Business and

7  Professions Code § 17200. Defendant's conduct as alleged herein has been and

8  continues to be deleterious to Plaintiff.

9  103. The California Business and Professions Code § 17200, *et seq.*

10  prohibits "unfair competition," defined as any "unlawful, unfair, or fraudulent

11  business act or practice." These acts or practices consist of those forbidden by law.

12  104. Defendant violated California Business and Professions Code § 17200

13  by engaging in unlawful business practices through the dissemination of Plaintiff's

14  confidential and identifying information in violation of California law, federal law,

15  including 15 USC, § 45, *et seq.* (Deceptive Practices Act), Canadian law, including

16  PIPEDA, international law, including Articles 3 and 4 of the Treaty with Thailand

17  on Mutual Assistance in Criminal Matters, and their own company policies,

18  including the Service Agreement and the Privacy Policy.

19  105. The unlawful, unfair, and fraudulent business acts and practices

20  described herein constitute ongoing and continuous unfair business practices within

21  the meaning of California Business and Professions Code § 17200 *et seq.*, and are

22  prohibited by the laws of the state of California, the laws of Canada, and

23  international law.

24  106. Defendant's practices described herein offend established public

25  policies and involve business practices that are immoral, unethical, oppressive,

26  unscrupulous and/or substantially injurious to customers.

27  107. Such practices include, but are not limited to, the unwarranted

28  intrusion into and provision of Internet users' private electronic communication

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1  information or records when Defendant knew or should have known such

2  information would substantially support the deprivation of freedom of speech, the

3  right to privacy and the right to due process of persons who used websites hosted

4  by Defendant to publish political commentary regarding Thailand.

5      108.  Plaintiff seeks injunctive relief, disgorgement of all profits resulting

6  from these unfair business practices, restitution and other appropriate relief as

7  provided in Business and Professions Code § 17203.

## THIRD CLAIM FOR RELIEF:  VIOLATION OF
## CONSTITUTIONAL PRIVACY RIGHTS

10      109.  Plaintiff re-alleges and incorporates by reference each and every

11  allegation contained in Paragraphs 1 through 108 as if set forth fully herein.

12      110.  Plaintiff, under the First Amendment to the United States Constitution,

13  Article I, Section I of the California Constitution and/or the common law, maintains

14  a legally protected privacy interest in the personal information he provided to

15  Manusaya and that was entrusted to Defendant.

16      111.  Plaintiff, pursuant to the First Amendment, Article I, Section I of the

17  California Constitution, and the common law had a reasonable expectation that the

18  personal information he supplied to Manusaya, which was entrusted to Defendant,

19  would not be disclosed to any third party without his prior consent or, at the very

20  least, without prior notice to him.

21      112.  Defendant's  unauthorized  disclosure  of  Plaintiff's  personal

22  information to a foreign country with a record of suppressing the right to free

23  speech without warning or notice to Plaintiff and without regard to Defendant's

24  legal obligation to maintain such information in confidence constitutes a serious

25  invasion of Plaintiff's privacy interests as defined by Art. 1, § 1 of the California

26  Constitution.

27      113.  Defendant's  disclosure  of  Plaintiff's  personally  identifiable

28  information, without prior notice, to Thai officials is offensive and objectionable to

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    a reasonable person of ordinary sensibilities.

2        114.   Plaintiff has suffered damages, including but not limited to emotional

3    distress and financial losses described above, that were proximately caused by

4    Defendant's violation of Plaintiff's constitutional rights.  Plaintiff is also entitled to

5    an award of attorneys' fees pursuant to California Code of Civil Procedure

6    § 1021.5.

7        115.   Defendant's violation of Plaintiff's privacy rights was willful.

8    Plaintiff acted with oppression, fraud and/or malice in disclosing Plaintiff's

9    personal information without his consent, and without prior notice, such that

10   Plaintiff is entitled to an award of punitive damages.

11       116.   Plaintiff alleges on information and belief that Defendant's practice of

12   disclosing personal information without consent, notice, or legal justification is

13   widespread and that the privacy interest of many individuals has been violated as a

14   result of Defendant's practices.  These practices are likely to continue unless and

15   until they are restrained by an injunction requiring, at a minimum, that Defendant

16   notify its account holders prior to releasing personal information of its account

17   holders or the personal information of the users of its account holders' websites.

18                          **PRAYER FOR RELIEF**

19       WHEREFORE, Plaintiff respectfully requests the following relief:

20       A.    Compensatory damages in an amount exceeding $75,000, or such

21   other sum as may be proven at trial;

22       B.    Restitution;

23       C.    Punitive damages;

24       D.    Attorney's fees and costs of the suit incurred herein to the extent

25   allowed by law;

26       E.    A permanent injunction prohibiting the release of private information

27   without specific and prior notice to Defendant's personal or corporate account

28   holders and to users of the account holders' websites;

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1    F.    Such other relief as the Court deems just and appropriate.

2

3    Dated: August 24, 2011          SNELL & WILMER L.L.P.

4                                    Mary-Christine Sungaila
                                     Deborah S. Mallgrave
5                                    Matthew E. Bennett

6    WORLD ORGANIZATION FOR HUMAN RIGHTS USA
                                     Allison M. Lefrak (*pro hac vice* pending)

7

8                                    By:    _____

9                                           Mary-Christine Sungaila

10                                   Attorneys for Plaintiff,
                                     ANTHONY N. CHAI
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

1

## DEMAND FOR JURY TRIAL

2          Plaintiff hereby demands a jury trial on each and every claim set forth herein.

3

4     Dated:  August 24, 2011          SNELL & WILMER L.L.P.

5                                          Mary-Christine Sungaila

                                           Deborah S. Mallgrave

6                                          Matthew E. Bennett

7     WORLD ORGANIZATION FOR HUMAN RIGHTS USA

                                           Allison M. Lefrak (*pro hac vice* pending)

8

9

10                              By:  _Mary Christine Sungaila_

                                     Mary-Christine Sungaila

11

                                     Attorneys for Plaintiff,

12                                   ANTHONY N. CHAI

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
(714) 427-7000

13593883                          - 25 -                          Complaint

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA


**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**


This case has been assigned to District Judge George King and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

## CV11- 6988 GHK (CWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.


All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501


Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANTHONY CHAI, <br> *Plaintiff* <br><br> v. <br><br> NETFIRMS.COM, INC., a Delaware Corporation, and <br> DOES 1-9, inclusive, <br> *Defendant* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> Civil Action No. <br> **CV11-06988**GHK (CWx) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Mary-Christine Sungaila (#156795); Deborah S. Mallgrave (#198603)
Snell & Wilmer L.L.P.
600 Anton Boulevard, Suite 1400,
Costa Mesa, CA 92626; Tel: 714.427.7000

Allison M. Lefrak (Pro Hac Vice Pending)
World Organization for Human Rights USA
2029 P Street, NW, Suite 202,
Washington, DC 20036; Tel: 202.296.5702

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

AUG 2 4 2011

*CLERK OF COURT*

Date: _____

**JULIE PRADO**   SEAL

*Signature of Clerk or Deputy Clerk*

13583688


American LegalNet, Inc.
www.FormsWorkFlow.com

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.


Date: _____     _____
                                                                         *Server's signature*

                                                            _____
                                                                         *Printed name and title*


                                                            _____
                                                                         *Server's address*

Additional information regarding attempted service, etc:


American LegalNet, Inc.
www.FormsWorkFlow.com

13583688

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
ANTHONY N. CHAI

**DEFENDANTS**
NETFIRMS.COM, INC., a Delaware Corporation, and DOES 1-9, inclusive

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Mary-Christine Sungaila (#156795)
Deborah S. Mallgrave (#198603)
Snell & Wilmer L.L.P., 600 Anton Blvd., Ste. 1400
Costa Mesa, CA 92626 Tel: 714.427.7000
Allison M. Lefrak (Pro Hac Vice Pending)
World Organization for Human Rights, USA, 2029 P. St., NW, Ste. 202, Washington, D.C. 20036; Tel: 202.296.5702

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** 75,000.00

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Negligence, unfair practices, and privacy claims under First Amendment of the US Constitution; California Constitution; Bus & Prof Code § 17200; Jurisdiction: Federal and diversity (28 USC 1332)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | **IMMIGRATION** | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | **FEDERAL TAX SUITS** |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: CV11-06988

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)   CIVIL COVER SHEET   Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s):

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Delaware |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Mary-Christine Sungaila_     Date August 24, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com